UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/20/2022_____

---

FRED STEVENS, IN HIS CAPACITY AS
CHAPTER 7 TRUSTEE OF THE BANKRUPTCY
ESTATE OF BOBBIE JO FORTE,

                    Plaintiff,

          v.

THE VILLAGE OF RED HOOK, THE COUNTY
OF DUTCHESS, DUTCHESS COUNTY SHERIFF
ADRIAN H. ANDERSON, DUTCHESS COUNTY
DISTRCIT ATTORNEY WILLIAM V. GRADY
ASSISTANT DISTRICT ATTORNEY MIRIAM
CITRO, THOMAS D'AMICANTONIO, TRAVIS
STERITT, NICHOLAS NORTON, individually and
in their Official capacity as Village of Red Hook
DETECTIVE/POLICE OFFICERS and DANA
RUSSO, individually and in her official capacity as
DUTCHESS COUNTY SHERIFF DEPTUY.

                    Defendants.

20 CV 08152 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Fred Stevens, in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of

Bobbie Jo Forte,[1] brings this action against Defendants the County of Dutchess, Adrian H.

Anderson, the Sheriff of the County of Dutchess, William V. Grady, the District Attorney of the

County of Dutchess, Miriam Citro, a Dutchess County Assistant District Attorney, and Dana

Russo, a Dutchess County Sheriff Deputy, individually and in their official capacities (the

"Dutchess County Defendants") and Defendants the Village of Red Hook and Red Hook

---

[1]    In accordance with the Court's Short Order on June 16, 2021, Fred Stevens was substituted as Plaintiff in his
capacity as Chapter 7 Bankruptcy Trustee of the Bankruptcy Estate of Bobbie Jo Forte. (ECF No. 68.) Although the
term "Plaintiff" necessarily refers to Bobbi Jo Forte at many points in this Opinion where the Court describes the
circumstances relevant to its decision, Fred Stevens is established as the real Plaintiff party in interest pursuant to
Federal Rule of Civil Procedure 17(a).

Detective/Police Officers Thomas D'Amicantonio, Travis Sterritt, and Nicholas Norton, individually and in their official capacities (the "Red Hook Defendants") in the Complaint. ("Compl.," ECF No. 12). Plaintiff asserts claims pursuant to 42 U.S.C. §1983 ("Section 1983"), including violations of Fourth Amendment rights to be free from false arrest and unreasonable search and seizure, denial of the First Amendment right to free speech, and for municipal liability (commonly referred to as a *Monell* claim). Plaintiff also advances a litany of related claims under New York state law, including for civil battery, civil trespass, and negligence. The Dutchess County Defendants and Red Hook Defendants each move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 46, 49.) The Court addresses Defendants' motions together in this Opinion. For the following reasons, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

### Police Visit to Plaintiff's Home on October 1, 2019

On October 1, 2019, Bobbie Jo Forte ("Forte") was present in her home at 44 Morehouse Ln in the Village of Red Hook, New York when Defendant Thomas D'Amicantonio, a Village of Red Hook police officer, arrived at her home. (Compl. ¶¶ 2, 18.) Plaintiff requested that D'Amicantonio, who was dressed in plain clothes, produce evidence that he was a police officer with a lawful reason to be on her property. (*Id*. ¶¶ 18, 20.) D'Amicantonio held up a piece of paper to the window of Forte's door, asserting that it granted him authority to arrest her. (*Id*. ¶ 21.)

Although Forte asked D'Amicantonio to produce a warrant, no warrant had been issued or signed for Forte's arrest at this time. (*Id*. ¶¶ 21-23.)

Forte called emergency services at 911 to verify D'Amicantonio's identity. She was connected to the Village of Red Hook Police Station, where she alleges police officers at the station ridiculed her and refused to provide information or protection. (*Id*. ¶¶ 25, 26.) Subsequently, Forte was connected to the office of Defendant Dutchess County Sherriff Adrian H. Anderson; Defendant Dutchess County Sheriff Deputy Dana Russo was then dispatched to Forte's home. (*Id*. ¶¶ 27, 28.)

After calling emergency services, Forte noticed a police car parked in her driveway and observed Defendant Red Hook police officer Travis Sterritt emerge from this car. (*Id*. ¶ 30.) Forte generally alleges that Sterritt used threats of violence to attempt to force her to exit her home and enter his vehicle. (*Id*. ¶¶ 30, 31.)

Defendant Russo then arrived at Forte's home, where she joined the attempt to arrest Forte and searched the perimeter of the home with Defendants D'Amicantonio and Sterritt in order to gain access (*Id*. ¶¶ 33-35.) Forte claims D'Amicantonio, Steritt, and Russo invaded the curtilage of Forte's home and areas used for ingress and egress not visible from public spaces despite Forte's request that they leave her property. (*Id*. ¶¶ 36-41.)

Forte alleges she was trapped for a prolonged period in her home by D'Amicantonio, Sterritt, and Russo, and that D'Amicantonio continued to question and express anger at her without advising her of her right to remain silent. (*Id*. ¶¶ 41-43.) During this time, Forte called a retired judge, who counseled her that she was not required to allow D'Amicantonio, Sterritt, and Russo

into her home or take her into custody. (*Id*. ¶¶ 42, 45.) D'Amicantonio, Steritt, and Russo subsequently left Forte's home. (*Id*. ¶ 47.)

***Plaintiff's Arrest and Prosecution***

On October 10, 2019, Forte contacted the office of Defendant Dutchess County District Attorney William V. Grady through a criminal defense attorney, at which point she was asked to turn herself in for arrest. (*Id*. ¶ 48.) Forte alleges that, when she did so, an information was issued, produced, and signed for the first time. (*Id*. ¶ 49.) Additionally, she contends that Defendants D'Amicantonio and Sterritt acted on casual information obtained from a person known to be involved in civil dispute with Forte rather than on a warrant, desk appearance ticket, or information. (*Id*. ¶¶ 50, 51.)

Forte pleaded guilty to a violation arising from the casual information described above and was charged with resisting arrest and making a false report based on the events that occurred at her home on October 1, 2019. (*Id*. ¶¶ 52-54, 58, 59.) Forte alleges that Defendant Assistant District Attorney Miriam Citro threatened to persist in prosecuting her on the charges of resisting arrest and making a false report unless Forte agreed not to pursue a civil case; Citro also admonished Forte for suing law enforcement and expressed a desire to protect law enforcement from Forte's grievances. (*Id*. ¶¶ 56, 60.) Ultimately, Citro offered Forte an Adjournment with Contemplation of

Dismissal (hereinafter "ACD") disposition for the charge of resisting arrest, to which Forte agreed. (*Id*. ¶¶ 60, 61.)

Forte continued to appear for mandatory court appearances until the charges of resisting arrest and making a false report were dismissed. (*Id*. ¶ 62.) These charges were sealed on June 18, 2020 in an order signed by Hon. Jonah Triebwasser on June 13, 2020. (*Id*.)

## LEGAL STANDARDS

### I.      Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 679.  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### II.     Materials Considered

 In considering a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint*." DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); and *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). A document is incorporated by reference where the complaint "make[s] a clear, definite and substantial reference" to it. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F.Supp.2d 273, 275–76 (S.D.N.Y. 2002) (collecting cases). "[E]ven if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on [a motion to dismiss]." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (second alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153).

Additionally, the Court may take judicial notice of certain publicly available documents, including, for example, a plaintiff's arrest reports, indictments, and criminal disposition data. *Corley v. Vance*, 365 F.Supp.3d 407, 432 (S.D.N.Y. 2019) (collecting cases); *see Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); and *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)). When taking judicial notice of such documents, the Court does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1991)).

**III.     42 U.S.C. §1983**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege that, "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *See Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *see also Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or her constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also Quinn v. Nassau Cnty. Police Dep't*, 53 F.Supp.2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution").

## DISCUSSION

### I.   Municipal Liability Pursuant to 42 U.S.C. § 1983 ("*Monell* Claim")

Plaintiff's first claim alleges a deprivation of rights under the United States Constitution and 42 U.S.C. § 1983 by Defendants the Village of Red Hook and the County of Dutchess. Defendants each argue that Plaintiff fails to plead sufficient facts to state a plausible *Monell* claim

on the basis that Plaintiff's Complaint offers conclusory statements in lieu of evidence of an official policy or custom that caused Plaintiff's alleged constitutional injuries.

A municipality may be sued under Section 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Therefore, any Section 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two-prong test for Section 1983 claims brought against a municipal entity. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Davis v. City of New York*, No. 07-CV-1395 (RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).

Plaintiff cannot satisfy the first prong necessary to establish *Monell* liability because her Complaint lacks sufficient allegations to indicate the existence of a municipal policy or custom on the part of either the Village of Red Hook or the County of Dutchess that caused her alleged injury. Plaintiff's allegations amount to a contention that Defendants failed to establish some undefined

policy or custom that would have prevented the asserted constitutional violations despite their alleged awareness of the risks of neglecting to do so. Even when favorably viewed, Plaintiff's first claim against the municipal defendants is comprised of generalized and conclusory failure to train allegations. (Compl. ¶¶ 63-68.) As a result, Plaintiff is unable to demonstrate that either municipality took any action other than to employ the individual Defendants whom Plaintiff contends committed the conduct alleged. *See Vippolis*, 768 F.2d at 40, 44.

Moreover, although a municipality's failure to respond to an obvious need for training or supervision may properly be considered a policy that is actionable under Section 1983 (*see Cash v. Cnty. Of Erie*, 654 F.3d 324. 334 (2d Cir. 2011)), a plaintiff must show that the municipality had "actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A less strict standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities." *Canton v. Harris*, 489 U.S. 378, 392. Here, Plaintiff's allegations do not show that either the Village of Red Hook or the County of Dutchess had actual or constructive notice of the need for different training or supervision to protect the rights of their citizens. Plaintiff does not, for instance, contend that there were similar incidents or a pattern of constitutional violations. Rather, Plaintiff offers the vague allegation that there were "recurrent circumstances" involving potential dangers to the constitutional rights of citizens. (Compl. ¶ 66.) This contention is not substantiated "with sufficient facts about [her] or others' experiences that suggest the existence of a failure to train or supervise to such an extent that it amounts to deliberate indifference to the rights of the general public." *Nesheiwat v. City of Poughkeepsie, N.Y.*, 11 Civ. 7072(ER), 2013 WL 620267, at *4 (S.D.N.Y. Feb. 13, 2013). Indeed, Plaintiff cannot "attempt[t] to rest [her] municipal claims on entirely [her] own experiences, which is insufficient to sustain a

Monell claim, even at the pleading stage." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992).

Given Plaintiff's failure to establish a municipal policy or custom, Plaintiff also cannot satisfy the second prong of Monell, which requires a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. As Plaintiff cannot establish *Monell* liability even when her allegations are accepted as true, Plaintiff's *Monell* claim is dismissed.

**II.     Speedy Trial and Fair Trial Claims Pursuant to 42 U.S.C. § 1983**

Plaintiff's second claim for relief alleges a deprivation of rights under the United States Constitution and 42 U.S.C. § 1983 by Defendants Dutchess County District Attorney William V. Grady and Assistant District Attorney Miriam Citro. Plaintiff largely reiterates with nearly identical language the allegations in her first claim, simply swapping out Defendants Village of Red Hook and County of Duchess for Defendants Grady and Citro as County of Dutchess prosecutors. (Compl. ¶¶ 69-73.)  To the extent Plaintiff repeats her *Monell* claim against Defendant the County of Duchess through Defendants Grady and Citro, she cannot succeed on her second cause of action for the same reasons stated above.

Yet, Plaintiff also appears to claim that Defendants Grady and Citro, acting as individuals and under color of state law, denied her constitutional rights to a speedy trial and fair trial because they "officially tolerated" the policies and practices that allegedly caused the violations. (Compl. ¶ 72.) These allegations, however, are entirely conclusory.

Although we must accept Plaintiffs' factual allegations as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Here, Plaintiff claims that Defendants Grady and Citro violated her fair

trial and speedy trial rights because they failed to establish policies that prevented the alleged violations of these rights and were aware of the risks of not implementing them. (Compl. ¶¶ 69-73.) Plaintiff does not provide any specific allegations about either the policies for which Defendants Grady and Citro were allegedly responsible or how they were aware their action or inaction concerning such policies endangered the constitutional rights of citizens. Thus, Plaintiff's claims that she was denied her rights to a speedy trial and fair trial because of Defendants Grady and Citro's approach to the "policies, practices customs or usages" for which they were allegedly responsible amount to no more than legal conclusions "couched as factual allegation[s]".

Even accepting Plaintiff's allegations as true, she fails to establish liability under 42 U.S.C. § 1983 for violations of the Sixth Amendment rights to a fair trial and speedy trial against Defendants Grady and Citro, regardless of whether she repeats her *Monell* claim or moves against Defendants Grady and Citro in their individual capacities. Therefore, Plaintiff's second claim is dismissed.

### III.   Fourth Amendment Claims Pursuant to 42 U.S.C. § 1983

Plaintiff alleges a bundle of Fourth Amendment violations pursuant to 42 U.S.C. § 1983 against a variety of Defendants, and the Court considers each of these violations in turn. First, Plaintiff's third claim alleges that Defendants D'Amicantonio, Sterritt, Norton, and Russo committed an unreasonable search and seizure. (Compl. ¶ 75.) Second, Plaintiff's sixth claim alleges that Defendants the Village of Red Hook, the County of Dutchess, Dutchess Country Sheriff Adrian H. Anderson, D'Amicantonio, Sterritt, and Russo violated her constitutional rights when they falsely imprisoned and arrested her. (*Id*. ¶¶ 92-94.) Third, Plaintiff's seventh claim alleges malicious prosecution as against all Defendants. (*Id*. ¶¶ 95-102.)

At the outset, to the extent Plaintiff attempts to establish *Monell* claims against the Village of Red Hook and the County of Dutchess for violations of her Fourth Amendment rights, she does not state a plausible claim for relief. Tellingly, Plaintiff's Complaint does not specify the "existence of a municipal policy or custom," with regard to any Fourth Amendment claim, which is required "to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *JF v. Carmel Cent. Sch. Dist.*, 168 F.Supp.3d 609, 616 (S.D.N.Y. 2016) (internal quotation marks omitted). Therefore, Plaintiff's Fourth Amendment claims against municipal Defendants the Village of Red Hook and the County of Dutchess are dismissed. *See Di Pompo v. Ruggiero,* No. 17-CV-8077 (CS), 2018 WL 5045339, at *3 (S.D.N.Y. Oct. 17, 2018).

Additionally, Plaintiff cannot state a plausible Fourth Amendment violation against Defendant Norton because she does not allege that he was personally involved in any of the actions that she claims caused violations of her Fourth Amendment rights. Accordingly, any claim against him fails for lack of personal involvement. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

**A. Search and Seizure Claims Pursuant to 42 U.S.C. § 1983**

Plaintiff alleges under Section 1983 that Defendants D'Amicantonio, Sterritt, and Russo committed an unreasonable search and seizure in violation of her Fourth Amendment rights.

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The contours of a search and seizure under the Fourth Amendment are well-defined. A search occurs when "'the government violates a subjective expectation of privacy that society recognizes

as reasonable.'" *United States v. Lambis*, 197 F.Supp.3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A search also includes the physical intrusion or trespass upon a person's property for the purpose of obtaining information. *El-Nahal v. Yassky*, 993 F.Supp.2d 460, 467 (S.D.N.Y. 2014). A seizure includes arrest and occurs when, considering all circumstances surrounding the encounter, a reasonable person would have believed that she was not free to leave. *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992). The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is reasonableness. *Riley v. California*, 573 U.S. 373, 381-82 (2014). The reasonableness standard invokes a "'careful balancing of governmental and private interests.'" *Harrell v. City of New York*, 138 F.Supp.3d 479, 488 (S.D.N.Y. 2015) (quoting *Soldal v. Cook Cnty.*, Ill., 506 U.S. 56, 71 (1992)).

However, "[b]efore determining whether a search or seizure is unreasonable, courts must find that a ... seizure occurred." *Reyes v. City of New York*, 992 F.Supp.2d 290, 295 (S.D.N.Y.2014). "A seizure triggering the protection of the Fourth Amendment occurs once an officer has 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.'" *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir.2013) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)). Indeed, in order to be "seized" a Plaintiff "must submit to police authority, for there is no seizure without actual submission." *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007); *see also United States v. Hightower*, 387 Fed.Appx. 118, 119–20 (2d Cir. 2010) (Unpublished Decision). "Whether conduct constitutes submission to police authority will depend, as does much of the Fourth Amendment analysis, on 'the totality of the circumstances—the whole picture.'" *Baldwin*, 496 F.3d at 219 (citation omitted). "[I]t is the nature of the interaction, and not its length, that matters." *Id*. (citations omitted).

Here, Plaintiff was not "seized" in a manner that triggers Fourth Amendment scrutiny because she never "submitt[ed] to police authority." *Id.* at 215, 218. Plaintiff was not arrested during the search and seizure that Defendants D'Amicantonio, Sterritt, and Russo are alleged to have committed at her home on October 1, 2019. (Compl. ¶¶ 19-47.) She was also advised by a former judge that she did not need to acquiesce to Defendants' request that she leave with them and never provided the Defendants' access to her home. (*Id.* ¶¶ 42, 45.) Therefore, even if one assumes that a reasonable person would not have felt free to leave Plaintiff's home because of Defendants' attempt to force her leave her home and submit to arrest, Plaintiff cannot plausibly claim that she yielded to this demonstration of police authority. *Marcano v. City of Schenectady*, 38 F.Supp.3d 238, 252 (N.D.N.Y. 2014) (the Court held that Plaintiff was not "seized" for Fourth Amendment purposes where, "[e]ven assuming that a reasonable person would not have felt free to leave when the officers shined their spot light on him, told him to stop, got out of the car, commanded that he show his hands, and even attempted to physically hold him when he and the officers slipped on the ice after Plaintiff began to flee, Plaintiff did not submit to this show of authority"). The totality of the circumstances, then, do not indicate the Plaintiff was seized within the meaning of the Fourth Amendment. They instead demonstrate that Plaintiff successfully evaded police authority, given that she refused Defendants entry until they left her home and did not acquiesce to her arrest until October 10, 2019, which is ten days after the events at her home occurred. (Comp. ¶ 48.); *United States v. Huertas,* 864 F.3d 214, 216 (2d Cir. 2017) (recognizing that conduct that "amounts to evasion of police authority is not submission") (quoting *United States v. Baldwin*, 496 F.3d 215, 219 (2d Cir. 2007)) (internal quotations omitted).

As the Court is unable to draw a reasonable inference that Plaintiff was "seized," even accepting her allegations as true, her Fourth Amendment claim for unreasonable search and seizure are dismissed.

## B.  False Imprisonment and Arrest Pursuant to 42 U.S.C. § 1983

Plaintiff alleges under Section 1983 that Defendants D'Amicantonio, Sterritt, and Russo falsely arrested and imprisoned her in violation of her Fourth Amendment rights.

False arrest and false imprisonment are substantially similar claims, and the Court will address them together as false arrest. *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007). Relatedly, a New York law claim for false arrest is "substantially the same" as a Section 1983 claim for false arrest under the Fourth Amendment. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). In order to state a claim for false arrest or false imprisonment, the plaintiff must show that "(1) the defendant[s] intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id*. (quoting *Lee v. City of New York*, 272 A.D.2d 586, 709 N.Y.S.2d 102, 102 (App. Div. 2000)) (internal quotation marks omitted); *see also Pelayo v. Port Auth.*, 893 F.Supp.2d 632, 639 (S.D.N.Y. 2012).

Here, as noted earlier in this Opinion, Plaintiff does not claim that she was arrested when Defendants D'Amicantonio, Sterritt, and Russo engaged in the conduct on which she rests her false arrest claim. (Compl. ¶¶ 19-47.)  Although Plaintiff alleges that D'Amicantonio, Sterritt, and Russo "trapped" her in her home for a "prolonged" period of time, they ultimately departed without making an arrest. (*Id.* ¶ 42.). Since "a claim for false arrest must be premised on an actual arrest," even if the Court accepts Plaintiff's allegations as true, she cannot state a plausible claim that she was falsely arrested. *Bissinger v. City of New York*, No. 06 CIV. 2325 (WHP), 2007 WL 2826756,

at *8 (S.D.N.Y. Sept. 24, 2007); *see also Nazarian v. Compagnie Nationale Air France*, 989 F.Supp. 504, 508 (S.D.N.Y. 1998) (false arrest claim was dismissed where no "arrest" occurred). Therefore, her claims for false arrest and imprisonment are dismissed.

### C.  Malicious Prosecution Pursuant to 42 U.S.C. § 1983

Plaintiff advances malicious prosecution claims under Section 1983 in violation of Plaintiff's Fourth Amendment rights against Defendants D'Amicantonio, Sterritt, Russo, Citro, Anderson, and Grady.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted). To establish a malicious prosecution claim, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff [by the defendant]; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted).

Plaintiff's malicious prosecution claim fails because she is unable to establish that the charges underlying her claim (i.e., for resisting arrest and making a false report) were dismissed in her favor, as she accepted an ACD for both charges. Where a prosecution does not result in an acquittal, it is generally not considered to have ended in favor of the accused for purposes of a malicious prosecution claim unless its final disposition indicates the accused's innocence. *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002). Regarding the present case, under New York law

an ACD[2] is not considered a favorable termination because it leaves open the question of the accused's guilt. *Id.*; *see, e.g.*, *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). An ACD also allows the state to pursue the criminal prosecution in the interests of justice during the conditional period. *See* N.Y.Crim. Proc. L. § 170.55(2); *Fulton v. Robinson*, 289 F.3d at 196 (2d Cir. 2002); *see generally* Hollender v. Trump Village Cooperative, Inc., 58 N.Y.2d at 424–26, 461 N.Y.S.2d at 767–68, 448 N.E.2d 432.

Here, a review of the Complaint and Plaintiff's Certificate of Disposition indicates that Plaintiff accepted an ACD for both her resisting arrest and false report charges on which the malicious prosecution cause of action rests.[3] As a result, her claims for malicious prosecution are dismissed.

## IV.     Right to an Attorney During a Custodial Interrogation Pursuant to 42 U.S.C. § 1983

Plaintiff's third claim for relief rests in part on an allegation that Defendants D'Amicantonio, Sterritt, Norton, and Russo violated her right under the Fifth Amendment to have an attorney present during a custodial interrogation pursuant to Section 1983.

As the Supreme Court established in *Miranda v. Arizona*, the Fifth Amendment protects individuals against self-incrimination and guarantees a right to counsel for custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also* U.S. v. Patane,

---

[2]     Under New York law, an ACD is a conditional dismissal that becomes final 6–12 months thereafter if the court has not, in the interim and on motion of the prosecutor, restored the case to the calendar upon determining that the dismissal "would not be in furtherance of justice." N.Y. Crim. Proc. L. § 170.55(2) (McKinney Supp. 2002).

[3]     Although Plaintiff's Complaint only states that Plaintiff accepted an ACD for her resisting arrest charge, Exhibit D (Plaintiff's Certificate of Disposition) provided by Defendant indicates that she also accepted an ACD for her false reporting charge. The Court considers Exhibit D in its review, as it is permissible on a motion to dismiss for a district court to take judicial notice of publicly available criminal disposition data, such as a certificate of disposition. *See Corley v. Vance*, 365 F.Supp.3d 407, 432 (S.D.N.Y. 2019) (collecting cases).

542 U.S. 630, 636, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

However, a recent United States Supreme Court case established that a violation of Miranda rules is not a basis for a claim under Section 1983. The Supreme Court concluded that, since "a violation of *Miranda* does not necessarily constitute a violation of the Constitution… such a violation does not constitute the deprivation of a right… secured by the Constitution for purposes of Section 1983." *Vega v. Tekoh*, 142 S.Ct. 2095, 2101 (2022); *see Price v. Peress*, No. 18-CV-4393 (ST), 2022 WL 4638148, at *14 (E.D.N.Y. Sept. 30, 2022) (citing *Vega* for the proposition that, "a violation of Miranda rules does not provide a basis for a claim under Section 1983"). Since Plaintiff cannot plead a *Miranda* violation under Section 1983, her claim that her right to an attorney during a custodial interrogation was violated under Section 1983 is dismissed.

**V.       Violation of First Amendment Rights Pursuant to 42 U.S.C. § 1983**

Plaintiff's third claim for relief also includes an allegation pursuant to Section 1983 that Defendants D'Amicantonio, Sterritt, Norton and Russo violated her First Amendment Rights.

To prove a First Amendment retaliation claim under Section 1983, a plaintiff must show that the speech or conduct was protected, that there was an adverse action, and that there was a causal connection between the protected speech and the adverse action. *Kotler v. Donelli*, 382 F. App'x 56, 57 (2d Cir. 2010) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)); *see also Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018)). Here, however, Plaintiff simply makes a conclusory allegation that Defendants D'Amicantonio, Sterritt, Norton, and Russo "caused injury and damage" in violation of her First Amendment rights. (Compl. ¶ 75.)  Plaintiff

does not even identify what part of her speech or conduct was protected by the First Amendment. Therefore, Plaintiff's First Amendment claim is dismissed.

## VI.    Abuse of Process

Plaintiff's fourth claim for relief is for abuse of process against all Defendants. Although it is unclear whether Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 or state law, this ambiguity is immaterial. In New York, a malicious abuse of process claim, "also supports liability under 42 U.S.C. § 1983." *Savino v. City of New York*, 331 F.3d 63, 76–77 (2d Cir. 2003).

In order to establish a claim for abuse of process, Plaintiff must demonstrate that Defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 70 (internal quotation marks omitted). "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York*, 901 F.Supp.2d 684, 691 (S.D.N.Y. 1995) (citing *PSI Metals v. Firemen's Ins. Co.*, 839 F.2d 42, 43 (2d Cir.1988)). Thus, "[t]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Slater v. Mackay*, 2015 WL 6971793, at *10 (quoting *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)) (internal quotation marks omitted).

Plaintiff fails to state a plausible claim for abuse of process against any Defendant, as she does not allege a collateral objective beyond her criminal prosecution that occurred after the process was issued. Although Plaintiff alleges that all Defendants "arrested and participated in

prosecuting [her] for resisting arrest and making a false report... in order to obtain the collateral objective of intimidating Plaintiff for their personal interests and further to prevent Plaintiff from disclosing the aforementioned evidence of misconduct," this statement is conclusory and speaks as much to Defendants' retaliatory motive as it does to their alleged purpose of preventing Plaintiff from disclosing evidence. (Compl. ¶ 79.); *see Pinter v. City of New York*, 976 F.Supp.2d 539, 568 (S.D.N.Y. 2013) (recognizing that "the proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement"). Yet, even if Plaintiff could satisfy the collateral objective requirement, she does not allege that a collateral objective occurred after the process was issued. She only claims that Defendants "arrested and participated in prosecuting Plaintiff" in order to achieve a collateral objective. (Compl. ¶ 79.); *see Slater*, 2015 WL 6971793, at *18 (recognizing that "even if [the plaintiff] could show that Defendants illegitimately *sought* process against her on the robbery charge, she has neither alleged nor adduced evidence that the Defendants pursued a collateral objective *after the issuance* of process").

The Court is unable to draw a reasonable inference from Plaintiff's allegations that Defendants pursued a collateral objective after process was issued. Therefore, Plaintiff's claims for abuse of process are dismissed.

## VII.   Due Process Pursuant to 42 U.S.C. § 1983

Plaintiff advances the specific claim pursuant to Section 1983 for a "violation of substantive due process as against all Defendants" in her eleventh claim for relief. She also makes what the Court infers are claims for violations of her procedural due process in her second and third claims for relief under Section 1983 against all non-municipal Defendants.

It bears reiterating that, although Plaintiffs' factual allegations must be accepted as true, the Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiff's procedural and substantive due process claims amount to legal conclusions.

Regarding Plaintiff's claims against all Defendants for violations of her substantive due process rights, Plaintiff's allegations are no more than a lengthy reiteration of the elements of a substantive due process violation under Section 1983. The Supreme Court has established that government conduct may be actionable under section 1983 as a substantive due process violation if it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952); *see also Baker v. McCollan*, 443 U.S. 137, 147 (1979) (Blackmun, J., concurring). Plaintiff's complaint parrots this established standard, asserting that all Defendants "individually and collectively are liable pursuant to 42 U.S.C. § 1983 for abuses against Plaintiff that shock the conscience in violation of [the Fourteenth Amendment]." (Compl. ¶ 118.) Likewise, Plaintiff buries the phrase "due process" within the bundle of constitutional violations alleged in claims for relief two and three. She does not make any specific contentions as to how her rights to due process were violated or even identify which individual Defendants are responsible; and she even leaves it to the Court to infer whether the violations are for procedural or substantive due process. (Compl. ¶¶ 69-76.)

Given that Plaintiff's claims for violations of her substantive and procedural due process rights are conclusory, the Court is unable draw a reasonable inference that any of the Defendants are liable for any Fourteenth Amendment due process claims under Section 1983.  Accordingly, Plaintiff's due process claims are dismissed.

**VIII.   Failure to Intercede Pursuant to 42 U.S.C. § 1983**

Plaintiff's fifth claim amounts to a cause of action for a failure to intercede against all Defendants. Although Plaintiff titles the claim, "derel iction of duty, deliberate indifference, and failure to intercede as against all Defendants," her allegations of "dereliction of duty" and "deliberate indifference" are made in the service of her attempt to show that all Defendants failed to intervene to protect violations of her constitutional rights. Plaintiff, for instance, claims all Defendants failed to intervene "in dereliction of their duty to Plaintiff and in depraved indifference to Plaintiff's well-being." (Compl. ¶ 88.)

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). A police officer can be liable for failure to intercede when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)). Further, "a failure to intervene claim is contingent only on the underlying claim." *Arbuckle v. City of New York*, 14-CV-10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept. 30, 2016) (citing *Matthews v. City of New York*, 889 F.Supp.2d 418, 443–44 (E.D.N.Y. 2012)). Accordingly, "there can be no failure to intervene claim without a primary constitutional violation." *Sanabria v. Tezlof*, No. 11 Civ. 6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (quoting *Forney v. Forney*, 96 F.Supp.3d 7, 13 (E.D.N.Y. 2015)).

Here, Plaintiff failed to state a plausible claim under Section 1983 for a failure to intercede against any Defendant because she has not successfully pled a primary constitutional violation, as discussed in detail above. Plaintiff's failure to intercede claim is therefore dismissed.

## IX.    State Law Claims

Plaintiff advances numerous claims under state law, including false imprisonment, negligence, and intentional infliction of emotional distress. However, in light of this Court's decision to grant Defendants' motions to dismiss on each of Plaintiff's federal claims, there is no need to assess the merits of Plaintiff's state law claims; the request to exercise supplemental jurisdiction over them is therefore declined. *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006); *see also Rocco v. N.Y.S. Teamsters Conference Pension and Ret. Fund*, 281 F.3d 62, 72 (2d Cir. 2002) (recognizing that a district court need not exercise supplemental jurisdiction over state claims where it dismissed federal claims).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Complaint are GRANTED. All claims against the Red Hook Defendants and Dutchess County Defendants are dismissed without prejudice.

Plaintiff is granted leave to file an Amended Complaint on or before November 10, 2022. Should Plaintiff not file an Amended Complaint by this date, Plaintiff's claims will be dismissed with prejudice. In the event Plaintiff files an Amended Complaint on or before November 10, 2022, Defendants are directed to answer, or otherwise respond to, the Amended Complaint within twenty-one (21) days following Plaintiff's filing of the Amended Complaint.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 46 and 49.

SO ORDERED:

Dated:    October 20, 2022
          White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

24