UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRED STEVENS, IN HIS CAPACITY AS CHAPTER 7
TRUSTEE OF THE BANKRUPTCY ESTATE OF
BOBBIE JO FORTE,

                    Plaintiff,

   -against-

THE VILLAGE OF RED HOOK et al.,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/10/2024

No. 20 Civ. 008152 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

    Plaintiff Fred Stevens, in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Bobbie Jo Forte,[1] brings this action against Defendants the County of Dutchess, Miriam Citro, a Dutchess County Assistant District Attorney, and Dana Russo, a Dutchess County Sheriff Deputy, individually and in their official capacities (the "Dutchess County Defendants") and Defendants the Village of Red Hook and Red Hook Detective/Police Officers Thomas D'Amicantonio and Travis Sterritt, individually and in their official capacities (the "Red Hook Defendants") in the Amended Complaint. ("Am. Compl.," ECF No. 71.)

    Plaintiff asserts claims pursuant to 42 U.S.C. §1983 ("Section 1983"), including violations of Fourth Amendment rights to be free from malicious prosecution, denial of the First Amendment right to free speech, and for municipal liability (commonly referred to as a *Monell* claim). Plaintiff also advances a litany of related claims under New York state law, including for civil trespass and

---

[1] In accordance with the Court's Short Order on June 16, 2021, Fred Stevens was substituted as Plaintiff in his capacity as Chapter 7 Bankruptcy Trustee of the Bankruptcy Estate of Bobbie Jo Forte. (*See* ECF No. 68.) Although the term "Plaintiff" necessarily refers to Bobbi Jo Forte at many points in this Opinion where the Court describes the circumstances relevant to its decision, Fred Stevens is established as the real Plaintiff party in interest pursuant to Federal Rule of Civil Procedure 17(a).

negligence. The Dutchess County Defendants and Red Hook Defendants each move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 75, 80.) The Court addresses Defendants' motions together in this Opinion. For the following reasons, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are taken from the Amended Complaint and assumed to be true for the purposes of Defendants' motions to dismiss.

On October 1, 2019, Bobbie Jo Forte was present in her home in the Village of Red Hook, New York when Defendants Thomas D'Amicantonio and Travis Sterritt, both Village of Red Hook police officers, arrived at her home. (Am. Compl. ¶¶ 22-23.) Plaintiff requested that D'Amicantonio, who was dressed in plain clothes, produce evidence that he was a police officer with a lawful reason to be on her property. (*Id.* ¶¶ 22, 24.) D'Amicantonio held up a piece of paper to the window of Plaintiff's door, asserting that it granted him authority to arrest her. (*Id.* ¶ 25.) The Red Hook officers did not possess a warrant at that time for either Plaintiff's arrest, or to search the property. (*Id.*). Plaintiff contends that she dialed 911 because she did not believe D'Amicantonio's representation that he was a police officer. (*Id.* ¶ 27.)

Plaintiff was connected to the Village of Red Hook Police Station, where she alleges police officers at the station ridiculed her and refused to provide information. (*Id.* ¶ 28.) Subsequently, Plaintiff was connected to the office of Defendant Dutchess County; Defendant Dutchess County Sheriff Deputy Dana Russo was then dispatched to Plaintiff's home. (*Id.* ¶¶ 29, 30.) After calling 911, Plaintiff noticed a police car parked in her driveway and observed Defendant Red Hook police officer Travis Sterritt emerge from this car. (*Id.* ¶¶ 31-32.) Sterritt was apparently enraged that

Plaintiff had called 911 and used threats of violence to attempt to force her to submit to arrest. (*Id.* ¶¶ 32, 33.)

Defendant Russo then arrived at Plaintiff's home, where she joined the attempt to arrest Plaintiff and searched the perimeter of the home with Defendants D'Amicantonio and Sterritt in order to gain access inside. (*Id.* ¶¶ 36-38.) During this time, Plaintiff called a retired judge, who counseled her that she was not required to allow D'Amicantonio, Sterritt, and Russo into her home or take her into custody. (*Id.* ¶¶ 42, 44.). Nearly an hour after arriving, D'Amicantonio, Steritt, and Russo left Plaintiff's home. (*Id.* ¶ 45.)

Ten days later, on October 10, 2019, Plaintiff contacted the office of Defendant Dutchess County District Attorney, at which point she was asked to turn herself in for arrest. (*Id.* ¶ 46.) Plaintiff alleges that, when she did so, an information was issued, produced, and signed for the first time. (*Id.* ¶ 48.) Additionally, she contends that Defendants D'Amicantonio and Sterritt acted on casual information obtained from a person known to be involved in civil dispute with Plaintiff rather than on a warrant, desk appearance ticket, or information. (*Id.* ¶¶ 47, 49.) Plaintiff pleaded guilty to a violation arising from the casual information described above and was charged with resisting arrest and making a false report based on the events that occurred at her home on October 1, 2019. (*Id.* ¶¶ 50-52.) Plaintiff continued to appear for mandatory court appearances until the charges of resisting arrest and making a false report were dismissed. (*Id.* ¶ 61.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for

the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

### I.   Municipal Liability Pursuant to Section 1983 ("*Monell* Claim")

Plaintiff's first and third causes of action (for malicious criminal prosecution and failure to intervene, respectively) allege a deprivation of rights under the United States Constitution and Section 1983 by Defendants the Village of Red Hook and the County of Dutchess. As was the case with Plaintiff's original Complaint, Defendants each argue that Plaintiff fails to plead sufficient facts to state a plausible *Monell* claim on the basis that Plaintiff's Amended Complaint puts forth conclusory statements in lieu of evidence of an official policy or custom that caused Plaintiff's alleged constitutional injuries.

Where a plaintiff brings constitutional claims against a municipal actor in her official capacity, the plaintiff must satisfy the requirements of *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). That is, the plaintiff must "plead the existence of a municipal custom, policy, or practice which caused the deprivation of her constitutional rights." *Martinetti v. Mangan*, No. 17-CV-5484 (KMK), 2019 WL 1255955, at *8 (S.D.N.Y. Mar. 19, 2019) (citation

omitted). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). For prior acts to constitute a de facto policy of a municipality, those acts must have been "so widespread and so persistent…[to] ha[ve] the force of law." *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 292 (S.D.N.Y. 2020). In addition, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Davis v. City of New York*, No. 07-CV-1395 (RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).

Here, Plaintiff alleges "a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause" and "a policy and/or custom of failing to intervene to protect citizens from excessive force by police officers." (*Id.* ¶¶ 66, 83.) Even accepting all of her allegations as true, Plaintiff cannot establish *Monell* liability. Plaintiff makes only generalized and conclusory statements about the municipal defendants' alleged practices. *See Davis*, 2008 WL 2511734, at *6. Beyond vague references to "maliciously prosecuting individuals" and "excessive force" (Am. Compl. ¶¶ 66, 83), Plaintiff provides no further detail on what these purported policies

entailed. For example, Plaintiff claims that the municipal defendants "inadequately hire, train, supervise, discipline, and/or terminate their officers, staff, agents and employees." (Am. Compl. ¶ 67.) Although a municipality's failure to respond to an obvious need for training or supervision may properly be considered a policy that is actionable under Section 1983, *Cash v. Cnty. Of Erie*, 654 F.3d 324. 334 (2d Cir. 2011), a plaintiff must show that the municipality had "actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional rights," *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff's allegations do not show that either the Village of Red Hook or the County of Dutchess had actual or constructive notice of the need for different training or supervision to protect the rights of their citizens. Plaintiff's bald assertion that Defendant "Travis Sterritt and other Village of Red Hook officer were known to have a habit of entering the property of Village of Red Hook residents without a valid reason and to have a habit of arresting persons who had not committed a crime," citing *Igoe v. Vill. of Red Hook & Travis Sterritt*, 18 CV 3846 (VB), (S.D.N.Y. Mar. 4, 2019), a case which settled without any admission of liability on behalf of Defendants the Village of Red Hook or Sterritt, does not change this. (*See id.* ¶ 35.) Plaintiff's citation to a single incident will not suffice to prove the existence of widespread and persistent municipal policy for purposes of *Monell*. *See Giaccio v. City of New York*, 308 Fed. Appx. 470, 471-72 (2d Cir. 2009) (dismissing the plaintiff's claim arising under Section 1983 where the plaintiff "identifie[d], at most, only four examples where the defendants might have" violated the plaintiff's constitutional rights); *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 316 (E.D.N.Y. 2016) (holding that two (2) instances of allegedly unconstitutional actions were insufficient to "support the inference that the County had a policy of" permitting or condoning such behavior); *Bowles v. New York City Transit Auth.*, No. 00 Civ. 4213, 2006 WL 1418602, at *16 (S.D.N.Y. May 23, 2006) (holding that the

combined evidence of only two (2) isolated incidents was insufficient to demonstrate a policy or custom for purposes of Section 1983).

In sum, Plaintiff's contentions in support of her *Monell* claims are not substantiated "with sufficient facts about [her] or others' experiences that suggest the existence of a failure to train or supervise to such an extent that it amounts to deliberate indifference to the rights of the general public." *Nesheiwat v. City of Poughkeepsie, N.Y.*, 11 Civ. 7072(ER), 2013 WL 620267, at *4 (S.D.N.Y. Feb. 13, 2013). As a result, Plaintiff is unable to demonstrate that either the Village of Red Hook or the County of Dutchess took any action other than to employ the individual Defendants whom Plaintiff contends committed the conduct alleged, and her *Monell* claims are dismissed as a result. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (holding that a municipality must take some action that caused plaintiff's injuries "beyond merely employing the misbehaving officer" to face *Monell* liability).

## II.   Section 1983 Malicious Criminal Prosecution Claim

Plaintiff asserts a Section 1983 claim for malicious criminal prosecution against all Defendants. (*See* Am. Compl. ¶¶ 62-70.) To sustain a Section 1983 malicious prosecution claim, a plaintiff must demonstrate "a seizure or other perversion of proper legal procedures implicating [her] personal liberty and privacy interests under the Fourth Amendment." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)) (alteration in original); *accord Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir. 1995); *Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir. 2010); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). A seizure triggering the protection of the Fourth Amendment occurs once an officer has 'by means

of physical force or show of authority,…in some way restrained the liberty of a citizen.'" *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). In order to be "seized" a Plaintiff "must submit to police authority, for there is no seizure without actual submission." *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007).

Here, Plaintiff cannot demonstrate that she suffered a seizure in violation of her Fourth Amendment rights and this problem is fatal to her claim. Plaintiff was not arrested during the search and seizure that Defendants D'Amicantonio, Sterritt, and Russo are alleged to have committed at her home on October 1, 2019. (*See* Am Compl. ¶ 45.) Nor was she seized following her being charged with resisting arrest and making a false report. In fact, the Amended Complaint is devoid of any allegations that Plaintiff was ever taken into custody, imprisoned, physically detained or seized. Rather, Plaintiff successfully evaded police authority, *United States v. Huertas*, 864 F.3d 214, 216 (2d Cir. 2017) (recognizing that conduct that "amounts to evasion of police authority is not submission") (quoting *Baldwin*, 496 F.3d at 219), given that she refused Defendants entry until they left her home and did not acquiesce to her arrest until October 10, 2019, (Am. Compl. ¶ 48). Because Plaintiff was never seized within the meaning of the Fourth Amendment, her malicious prosecution claim is dismissed.

### III. Section 1983 Freedom of Speech Claim

Plaintiff claims that Defendants violated her First Amendment rights by (1) violently threatening her and (2) initiating a criminal prosecution against her in retaliation for her calling 911 to report Defendants D'Amicantonio, Sterritt, and Russo's presence on her property. (Am Compl. ¶ 72-76.) To prevail on a First Amendment retaliation claim, a plaintiff must show that the speech or conduct at issue was protected, that there was an adverse action, and that there was a causal connection between the protected speech and the adverse action. *Kotler v. Donelli*, 382 F.

App'x 56, 57 (2d Cir. 2010) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)); *see also Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018)). In addition, when the plaintiff is "a private citizen who sued a public official," the Second Circuit has required the plaintiff to demonstrate a First Amendment harm, such as a chilling effect on the plaintiff's speech. *Kuck v. Danaher,* 600 F.3d 159, 168 (2d Cir.2010) (quoting *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001)); *see Butler v. City of Batavia,* 323 Fed.Appx. 21, 22–23 (2d Cir.2009) (applying the *Curley* test); *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (same). In other words, "plaintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right." *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (quoting *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir. 2002)).

Here, Plaintiff is unable to demonstrate that any action taken by Defendants chilled the exercise of her First Amendment right to free speech. Even assuming that Plaintiff engaged in conduct protected by the First Amendment by calling 911, Plaintiff only alleges that Defendant Sterritt began threatening her *after* she called had completed her 911 call. (*See* Am. Compl. ¶ 132.) His purported actions therefore in no way interfered with Plaintiff's exercise of her First Amendment rights. Indeed, even the station police's laughter and ridicule of Plaintiff for calling 911 did not deter Plaintiff from staying on the line long enough to be "connected to the office of [t]he Dutchess County Sherriff from whom she requested assistance and protection." (*Id.* ¶¶ 28-29.) Because Plaintiff "can show no change in [her] behavior, [s]he has quite plainly shown no chilling of [her] First Amendment right to free speech," through Defendants' alleged threats of violence. *See Curley*, 268 F.3d at 73.

Plaintiff likewise fails to demonstrate any chilling effect on her speech as a result of Defendants' initiation of a criminal prosecution against her. To sustain her First Amendment

retaliation claim, Plaintiff must put forth specific instances where she "desired to exercise her First Amendment rights but was chilled by" Defendants' alleged conduct. *See Mangano v. Cambariere*, 04 Civ. 4980, 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007). Instead, Plaintiff offers only speculation that "[s]uch retaliation would have a chilling effect on [her] from further criticism of such illegal and unconstitutional government action." (*See* Am. Compl. ¶ 75.) But "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Zherka v. DiFiore*, 412 F. App'x 345, 347 (2d Cir. 2011) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)) (internal quotation marks omitted). Instead, "to properly allege a claim for First Amendment retaliation, a plaintiff must show that [her] First Amendment rights were "'actually chilled.'" *Balaber–Strauss v. Town/Vill. of Harrison,* 405 F.Supp.2d 427, 433 (S.D.N.Y. 2005) (quoting *Curley,* 268 F.3d at 73). Plaintiff fails to do so here.

Plaintiff's Amended Complaint has not put forth a set of facts that if proven true would substantiate that her rights under the First Amendment were actually chilled. "The absence of a chilling effect…is fatal to this type of First Amendment claim." *Richardson v. New York City Health & Hosps. Corp.,* No. 05CIV6278RJS, 2009 WL 804096, at *20 n. 8 (S.D.N.Y. Mar. 25, 2009). Accordingly, Plaintiff's First Amendment retaliation claim is dismissed.

### IV.    Failure to Intervene Claim

Plaintiff's third cause of action is for a failure to intervene/intercede against all Defendants. (*See* Am. Compl. ¶¶ 80-82.) "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). A police officer can therefore

be liable for failure to intercede when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)). A failure to intervene claim is "contingent" on an underlying claim for a constitutional violation. *Arbuckle v. City of New York*, 14-CV-10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept. 30, 2016) (citing *Matthews v. City of New York*, 889 F.Supp.2d 418, 443–44 (E.D.N.Y. 2012)). Accordingly, "there can be no failure to intervene claim without a primary constitutional violation." *Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) (citation omitted)).

Here, Plaintiff failed to state a plausible claim for an underlying constitutional violation. *See supra,* Discussion Sections II-III. Her failure to intervene claim is therefore "also unsuccessful due to the lack of a predicate constitutional violation." *Harig v. City of Buffalo*, No. 22-30-CV, 2023 WL 3579367, at *5 (2d Cir. May 22, 2023). Plaintiff's failure to intercede claim is dismissed.

**V.     State Law Claims**

Plaintiff advances numerous claims under state law, including civil assault, civil trespass, negligence, and intentional infliction of emotional distress. However, in light of the Court's decision to grant Defendants' motions to dismiss on each of Plaintiff's federal claims, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—…point[s] toward declining to exercise jurisdiction over the remaining state-law claims." *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988). In addition, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental

jurisdiction. *See, e.g., Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir. 2001); *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Rocco v. N.Y.S. Teamsters Conference Pension and Ret. Fund*, 281 F.3d 62, 72 (2d Cir. 2002) (recognizing that a district court need not exercise supplemental jurisdiction over state claims where it dismissed federal claims).

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss the Amended Complaint are GRANTED. Because the Court previously granted Plaintiff leave to file an Amended Complaint, (*see* ECF No. 70), all claims herein are dismissed with prejudice. The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 75 and 80, to enter judgment in favor of Defendants and close the case.

Dated:   April 10, 2024                              SO ORDERED:
          White Plains, New York

                                                                     NELSON S. ROMÁN
                                                                  United States District Judge